## W. T. CARTER *v*. THE STATE.

LICENSE. *Keeping restaurant. Tax on business, not on keepers.*

T. paid the privilege-tax, and took out a license, under the revenue law of this State (chap. 10, Code 1880), to keep a restaurant. He commenced business under his license, but in a short time took C. into partnership with him, who thereafter conducted the business. C. was then indicted for keeping a restaurant without a license. The circuit judge decided that C. was not protected by the license to F., and he was accordingly convicted and fined. *Held*, that it is the business of keeping a restaurant which is taxed, and the payment of one tax for one business protects all of the parties engaged in that business, whether they be partners at the time the license is obtained, or afterwards become such.

APPEAL from the Circuit Court of Yalobusha County.

Hon. W. S. FEATHERSTON, Judge.

The appellant was indicted for keeping a restaurant without a license. By agreement, the case was tried by the court, and he was convicted. His case was submitted to this court on a

bill of exceptions containing an agreed statement of facts as follows: " On the 1st of May, 1882, J. L. Thackston took out a restaurant license and paid $10 for the privilege of running a restaurant in the town of Coffeeville for one year, under the firm name of J. L. Thackston & Co. At the time of taking out the license, Thackston had no partner, the object being, in taking the license out in the name of J. L. Thackston & Co., to employ some other person in connection with him to run the restaurant under this name and license. He afterwards employed W. T. Carter, for a part of the profits, to take charge of the business, and they were to be equal partners. Afterwards, Carter was called upon by the sheriff for his license as a restaurant-keeper, when he exhibited the Thackston & Co. license, and the sheriff told Carter he thought it would do, but would investigate, and if not, he would call again. The sheriff did not call to see Carter any more. At the time he was indicted, Carter was running this restaurant under the Thackston & Co. license, and this is the only restaurant run under the Thackston & Co. license in Coffeeville."

*J. B. H. Hemingway*, for the appellant.

The simple question presented is, whether a license to keep a restaurant, taken out for a firm, will protect one who subsequently becomes a member of the firm. In this case, the license was taken out for J. L. Thackston & Co. The firm was composed of Thackston alone; but his purpose in taking out the license as he did was to get a partner to carry on the business with him; and he soon took Carter, the appellant, into partnership with himself. There was no purpose to conduct business at two places, or by two persons. The proof is that there has been no evasion of the revenue law; and the State has lost nothing by Thackston having Carter in business with him. My view is that even without the addition of the words "& Co." Thackston's license would protect any partners that he might afterwards associate with him, wherever the license would protect Thackston himself. The intent of the law is to license

one business at one place.   If it be necessary for new partners to take out a license to conduct an old business, then every incoming partner, even if a hundred, would be compelled to have a license for conducting a business which the law had authorized upon payment of one-tenth of the revenue finally exacted, while the business was the same, and no greater. The evidence shows that the appellant here thought he was complying with the law, and was confirmed in his belief by the sheriff.

*T. C. Catchings*, Attorney-General, for the State.

The tax paid by Thackston, and which it is claimed that Carter should have paid, is a tax " on each restaurant," etc. Any person desiring to run a restaurant, must first pay the price to the collector of taxes, and obtain from him the license required.   Sect. 589, Code.   The license so issued is " a personal privilege, enjoyable only by the person to whom it is issued," and it is " not transferable."   Sect. 595, Code. Taken literally, this provision would prohibit any person other than Thackston, from doing business under the license obtained by him.   While, in taking Carter into partnership, it cannot perhaps be said that he had transferred the license to him in violation of the statute, yet if Carter could do business under that license, as his partner or otherwise, the license would be enjoyable by some other person than the one to whom it was issued, and that the statute, taken literally, absolutely prohibits under all circumstances.   I have been able to find no authority bearing upon the question.

COOPER, J., delivered the opinion of the court.

Sect. 585 of the Code of 1880 enumerates the privileges upon which a tax is levied by the State.

For convenience, all privileges taxed are named in one section, which consists of many paragraphs.   The phraseology is varied in the various paragraphs, each of which treats of a different and distinct subject.   In some of them the tax is levied upon the person prosecuting the business, as each law-

yer, each dentist, each broker; in this class, the tax being personal, must be paid by every person following the vocation, though two or more are employed in it as partners. In others it is upon the business itself, as each store, each bank, each hotel, each restaurant; in this class but one tax is levied, though more than one person may be interested in the business; in other paragraphs the place of business or the article used in it is taxed, as each room or hall used as a theatre; each billiard or Jenny Lind table.

Sect. 589 makes it unlawful for any person to exercise any of the privileges enumerated in sect. 585, without first having obtained a license so to do, and sect. 595 declares that such license " shall be a personal privilege, enjoyable only by the person to whom it is issued, and it shall not be transferable."

The object of the Legislature, in prohibiting the transfer of the license, was to prevent a sale of it by one retiring from the business to one about to embark in it, and to prevent evasions of the law by the use of the same license by two persons at the same time. If the license could be transferred a door would be opened for the perpetration of frauds upon the law, and one indicted for its violation could easily sustain a fabricated defence, by purchasing a license, and procuring the owner to date the transfer anterior to the commission of the offence charged in the indictment.

In the case at bar it was the business (keeping a restaurant) which is taxed, and the tax is the same, whether one or more persons are engaged in it. If the firm had been in existence at the time of the issuance of the license, it would not have been necessary for each member to have paid a tax; but the payment by one would have protected all. The evidence shows that the restaurant, for the keeping of which the appellant was indicted and convicted, is the same for which a license fee had been paid by Thackston; that there has been no sale of the business or transfer of the license, but that the appellant has, since the date of its issuance, become

a partner with Thackston in the business. We think, under these circumstances, the license protected both members of the firm, just as it would have done if the firm had been in existence at the time of the payment of the license fee.

The case having been submitted on an agreed statement of facts, which does not establish the guilt of the appellant, the judgment is reversed and the appellant discharged.