MICHAEL HARNESS *v.* J. H. WILLIAMS, TRUSTEE.

1. PRIVILEGE TAX. *On store. Meaning of word "stock" in § 585, Code of 1880.
   What included. Cotton collected for debts.*
   Cotton purchased by a merchant from his customers in payment of debts due
   him for goods sold is not a part of the *stock* of such merchant in the sense
   in which that word is used in § 585, Code of 1880, which fixes a privilege
   tax on "each store" in proportion to the "stock" carried therein. The
   word "stock," as therein used, comprises only the goods, etc., kept by the
   merchant for sale in the course of business, and cannot be extended to cover
   the collections made by him, whether in money or in property taken as a
   mere step in the collection of the debts due him.

2. SAME. *Levied on "store." Change of membership of firm. Section 585, Code of
   1880, construed.*
   By § 585, Code of 1880, a tax is levied upon "each store," and not upon each
   member of a firm transacting business in a store, hence a change of mem-
   bership in the firm, whether caused by the retiring of one partner or the
   incoming of another, does not require the payment of another privilege
   tax if one has already been paid for the store. *Carter* v. *The State,* 60 Miss.
   456, cited.

3. SAME. *Change in mercantile firm. "Amnesty act" of March 12, 1886, construed.
   Case in judgment.*
   Where a business has been transacted for two years by two persons as members
   of a mercantile firm without payment of the tax required by law, and then
   a third member is admitted and the business transacted another year, also
   without the payment of a proper privilege tax, the business is the same
   throughout the entire three years within the meaning of the revenue law
   taxing the privilege of conducting the same, and payment of three full years'
   privilege tax thereon is a compliance with the terms of the act of March
   12, 1886, and validates all contracts made in the course of such business. It
   is not required that those who composed the firm for the first two years
   should pay three years' privilege tax, and that those who composed it the
   last year should also pay such tax for such time.

APPEAL from the Circuit Court of Hinds County.
HON. T. J. WHARTON, Judge.

In 1883 and 1884 the firm of Williams & Williams were carrying on a general merchandise business. On January 1, 1885, this firm was changed to Williams & Black, the latter having purchased an interest in the old firm.

On March 22, 1884, Michael Harness opened an account with Williams & Williams, and continued the same until Williams & Black began business, when this account was transferred to the latter firm. Harness continued to trade with Williams & Black until January 6, 1887. At various times settlements were had, and the indebtedness found to be due from Harness to Williams & Williams and Williams & Black was then evidenced by promissory notes secured by deeds of trust, the last of which are of date March 5 and February 11, 1886, respectively. J. H. Williams, the trustee in these several deeds of trust, brought this action of replevin to recover possession of the property included in them, the conditions thereof being broken.

The defendant, Harness, interposed the plea that the plaintiffs had not complied with the provisions of § 585, Code of 1880, and could not maintain their action on that account. The evidence tended to show that Williams & Williams paid a privilege tax for two full years, 1883 and 1884, under the "Amnesty" Act of March 12, 1886, and Williams & Black, a firm composed of Williams & Williams and Black, paid for the time they had been in business, but did not pay for three full years; that the aggregate amount paid was sufficient to cover one continuous business if cotton which such merchants had on hand and had taken from their customers in payment of debts was not to be counted in estimating the value of stock on hand, and insufficient if so counted. The jury found for the plaintiff in replevin and from the judgment against him the defendant appealed.

*E. E. Baldwin*, for the appellant.

The proof showed that in paying amnesty tax Williams & Williams paid in their name on two years, 1883 and 1884, and Williams & Black on one year, 1885. It was objected that this was an insufficient payment, and that under the law each firm should have paid three years' taxes, it being in the nature of a penalty and not in recompense of any unpaid taxes.

The court below ruled that it was proper for the two firms to pay three years' amnesty tax between them, two years in the name of one and one year in the name of the other; that the amnesty tax was not a penalty, but only restitution; that cotton kept for sale by a merchant was no part of his stock, and was not to be counted in estimating the value of his stock.

If a merchant has in the spring a ten thousand dollar stock of goods in his store for sale to the farmers, and in the fall has only three thousand dollars' worth of the same to sell them, but has seven thousand dollars' worth of cotton in his warehouse for sale to the cotton buyers, has he not at each of these times a ten thousand dollar stock?

*E. E. Baldwin* also made an oral argument.

*Wells & Williamson,* for the appellee.

1. When the Amnesty Act was passed in 1886, though these two firms on an estimate believed that they had paid sufficient tax on each of those years, yet out of an abundance of caution and under the advice of their counsel they proceeded to pay the amount demanded by the Amnesty Act.

No objection is made as to the amount, but it is insisted that as the Amnesty Act of 1886 gives its benefits to those persons who pay for "*three* full years," the parties to this suit, to avail themselves of that act, must have paid for three full years for each of said firms. That is, although Williams & Williams as a firm did not do business in the year 1885, yet they ought to have paid a full privilege tax for that year, and although it is true that the firm of Williams & Black had no existence during the years 1883 and 1884, yet it ought to have paid the privilege tax for both those years. A careful analysis of the law referred to will, we think, convince the court that such is not the proper construction to be put on that act. The very words of the act make it apply to those persons who from any cause failed, neglected, or refused, in whole or in part, to make the payment so required, etc. If the firm of Williams & Williams had no existence as a firm in 1885, how could it have failed, neglected, etc.? And so, if the firm of Williams & Black had no existence in 1883 and 1884, how could it

have failed to pay?  Again, the said law says that "they should pay the true amount that *should have been paid*" in order to have the benefit of that act.  If the firm of Williams & Black had no existence in 1883 and 1884, what is the true amount they should have paid?  Manifestly, nothing.  And as Williams & Williams had no existence in 1885, then they should have paid nothing. Manifestly, the amnesty tax was paid by the two firms for the three years in the only way it could have been done.

2.  The next question raised is, whether or not, in estimating the stock of goods in the store upon which the privilege tax is levied, the cotton purchased by the merchant, either on account or when the money was paid, is to be estimated.

It is manifest, we think, that the law contemplated nothing except the stock of goods, wares, and merchandise which the merchant keeps for sale, and not what he takes in payment for those goods.

*W. C. Wells*, of counsel for the appellee, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

1.  Cotton purchased by a merchant from his customers in payment of debts due to him from them for goods sold is not a part of the stock of such merchant in the sense in which that word is used in § 585 of the Code of 1880, which fixes a privilege tax upon "each store" proportionate to the "stock" carried therein. The word "stock" as therein used comprises only the goods, etc., kept by the merchant for sale in the course of business, and cannot be extended to cover the collections made by him, whether they are made in money or in property taken as a mere step in the collection of the debts due him.

2.  By § 585 of the Code of 1880 a tax is levied upon "each store," and not upon each member of a firm transacting the business in that store.  A change of membership in the firm, whether caused by the retiring of one partner or the incoming of another, does not require the payment of another tax if one has already been paid.  *Carter* v. *State*, 60 Miss. 456.

3.  Where a business has been transacted for two years by two

persons as members of a mercantile firm, without payment of the tax required by law, and then a third member is admitted and the business transacted another year, also without payment of the proper privilege tax, the business is the same throughout the entire three years within the meaning of the revenue law taxing the privilege of conducting the same, and payment of three full years' privilege tax thereon is a compliance with the terms of the act of March 12, 1886 (Acts of 1886, page 32), and validates all contracts made in the course of such business. It is not required that those who composed the firm for the first two years should pay three years' privilege tax, and that those who composed it the last year should also pay privilege tax for such time.

*The judgment is affirmed.*